# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CORROZI-FOUNTAINVIEW, LLC,[1] | ) | Case No.: 10-11090 (KG) |
| | ) | |
| Debtor. | ) | **Re: Docket No. 152** |
| | ) | |

## FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507 (I) APPROVING POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, AND (V) MODIFYING AUTOMATIC STAY

Upon the motion (the "DIP Motion") of Debtor Corrozi-Fountainview, LLC (the "Debtor" or the "Borrower"[2]), debtor and debtor in possession in the above-captioned Chapter 11 case, and pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking entry of a final order (this "Final Order") *inter alia*:

(i) authorizing the Debtor to obtain secured postpetition financing (the "DIP Financing") on a superpriority basis pursuant to the terms and conditions of that certain Debtor in Possession Construction Loan and Security Agreement (as amended, supplemented, restated, or otherwise modified from time to time, the "Credit

---

[1] The Debtor's mailing address is 102 Robino Court, Suite 301, Wilmington, Delaware 19804 and the last four digits of its tax identification number are 2827.

[2] Unless otherwise noted, capitalized terms used in this Order shall have the same definitions as in the Credit Agreement and the DIP Motion.

Agreement") by and between the Borrower and PNC Bank, N.A. ("PNC" or the "Lender"), substantially in the form annexed to the DIP Motion;[3]

(ii) authorizing the Debtor to execute and deliver the Credit Agreement and all other documents required by Lender in connection with the DIP Financing or which otherwise might be required from time to time or reasonably requested by Lender (collectively, the "Loan Documents") by and between the Borrower, the Guarantors and the Lender, and to perform such other acts as may be necessary or desirable in connection with the Loan Documents;

(iii) granting the DIP Financing and all obligations owing thereunder and under the Loan Documents to the Lender (collectively, and including all "Obligations" as described in the Credit Agreement, the "DIP Obligations") allowed superpriority administrative expense claim status in the Case and any Successor Cases (as defined herein);

(iv) granting to the Lender, automatically perfected security interests in and liens upon all of the Collateral, including, without limitation, all property constituting "Cash Collateral," as defined in Section 363(a) of the Bankruptcy Code, which liens shall be subject to the priorities set forth herein;

(v) authorizing and directing the Debtor to pay the principal, interest, fees, expenses, and other amounts payable under the Loan Documents as such become due, including, without limitation, closing fees and the reasonable fees and disbursements of the attorneys, advisers, accountants, and other consultants of the Lender, all to the extent provided in and in accordance with the terms of the Loan Documents;

---

[3] A copy of the Credit Agreement reflecting revisions agreed to by the parties after the Motion was filed is attached as Exhibit A to this Order.

(vi)  authorizing the use of Cash Collateral of the Lender under the Pre-Petition Loan Documents, and providing adequate protection to the Lender for any Diminution in Value of its interests in the Pre-Petition Collateral, including the Cash Collateral (each as defined herein); and

(vii)  vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Loan Documents and this Final Order, as limited pursuant hereto.

The Court having considered the DIP Motion, the Declaration and Supplemental Declaration of Michael A. Stortini, the objections filed with respect to the Motion, the Loan Documents, and the evidence and arguments submitted at the hearing held on May 31, 2011 (the "Hearing); and notice of the Hearing having been provided in accordance with Bankruptcy Rules 4001(b), (c), and (d), and 9014; and the Hearing to consider the relief requested in the DIP Motion having been held and concluded; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved, or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE HEARING BY THE DEBTOR, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.  *Petition Date*.  On March 31, 2010 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing this Case.

B.      _Debtor in Possession_.  The Debtor is continuing in the management and operation of its businesses and properties as a debtor in possession pursuant to Sections 1107 and 1008 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Case.

C.      _Jurisdiction and Venue_.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings and over the persons and property affected hereby.  Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Case and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      _Committee Formation_.  As of the date hereof, the United States Trustee (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in this Case pursuant to Section 1102 of the Bankruptcy Code (the "Creditors Committee").

E.      _The Debtor's Stipulations_.  After consultation with its attorneys, and without prejudice to the rights of parties in interest as set forth in paragraph 27 hereof, the Debtor admits, stipulates, acknowledges, and agrees that (collectively, paragraphs E(i) through F(v) hereof shall be referred to herein as the "Debtor's Stipulations"):

(i)      _Prepetition Facility_.  Pursuant to the Pre-Petition Loan Documents PNC provided the Pre-Petition Loan to or for the benefit of the Borrower.

(ii)      _Pre-Petition Collateral_.  To secure the Pre-Petition Obligations, the Borrower granted to the Lender Pre-Petition Liens on Pre-Petition Collateral.

(iii)      _The Pre-Petition Liens_.  The Pre-Petition Liens on the Pre-Petition Collateral were perfected as of the Petition Date.

(iv) *Validity of the Pre-Petition Liens, Claims, and Obligations.* After consultation with its attorneys, but subject to the provisions of paragraph 27 hereof, the Debtor and the Lender acknowledge and agree that: (a) the Pre-Petition Liens are valid, binding, enforceable, non-avoidable, and perfected; (b) as of the Petition Date, the Pre-Petition Liens had priority over any and all other liens on the Pre-Petition Collateral; (c) the Prepetition Credit Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor and the Guarantors, enforceable in accordance with the terms of the Pre-Petition Loan Documents (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code); (d) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Pre-Petition Liens or the Pre-Petition Credit Obligations exist, and no portion of the Pre-Petition Liens or the Prepetition Credit Obligations is subject to any challenge or defense, including, without limitation, avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtor and its estate has no offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against the Lender, and/or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the Pre-Petition Loan Documents; (f) as of the Petition Date, the liquidation value of the Pre-Petition Collateral securing the Pre-Petition Credit Obligations ("Pre-Petition Credit Obligations") equalled or exceeded the amount of those obligations, including the accrued and unpaid interest, fees (including, without limitation, attorneys' fees and related expenses), and any and all other charges of whatever nature owing in respect of

such obligations; (g) the Debtor has waived, discharged, and released any right it may have (i) to challenge any of the Prepetition Credit Obligations and/or the security for the Prepetition Credit Obligations, and (ii) to assert any offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action against the Lender, and/or its affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees; and (i) any payments made on account of the Prepetition Credit Obligations to or for the benefit of the Lender prior to the Petition Date were on account of amounts in respect of which the Lender were secured, were payments that were made from the use, sale or other disposition of Lender' Pre-Petition Collateral, and such payments did not diminish any property otherwise available for distribution to unsecured creditors.

(v)     *Cash Collateral*.  All of the Debtor's cash, including the cash in its deposit accounts, wherever located, whether as original collateral or proceeds of other Pre-Petition Collateral, constitutes the Cash Collateral of the Lender.

(vi)     *Default by the Debtor*.  The Debtor acknowledges and stipulates that the Debtor is in default of its debts and obligations under the Pre-Petition Loan Documents.

F.     *Findings Regarding Postpetition Financing*.

(i)     *Request for Postpetition Financing*.  The Debtor seeks authority on a final basis to (a) enter into the DIP Financing on the terms described herein and in the Loan Documents, and (b) use Cash Collateral on the terms described herein to administer its Case and fund its operations pursuant to this Final Order.

(ii)     *Priming of Pre-Petition Liens*.  The priming of the Pre-Petition Liens and all other liens of the Lender on the Pre-Petition Collateral under Section 364(d)

of the Bankruptcy Code, as contemplated by the DIP Financing and as further described below, will enable the Debtor to obtain the DIP Financing and to continue to operate its business for the benefit of its estate and its creditors. The Lender and the holders of Prior Liens are entitled to receive adequate protection as set forth in this Final Order, pursuant to Sections 361, 363, and 364 of the Bankruptcy Code, for any diminution in the value of its interests in the Pre-Petition Collateral (including Cash Collateral) resulting from the Debtor's use, sale, or lease (or other decline in value) of such collateral, the imposition of the automatic stay, the priming of the Pre-Petition Liens on the Pre-Petition Collateral, and the subordination of the DIP Loans and the Interest Residual to the Carve-Out (collectively, and solely to the extent of any such diminution in value, the "Diminution in Value").

(iii)    *Need for Postpetition Financing and Use of Cash Collateral.* The Debtor's need to use Cash Collateral and to obtain credit pursuant to the DIP Financing is critical in order to enable the Debtor to continue operations and to administer and preserve the value of its estate. The ability of the Debtor to finance its operations, maintain business relationships with its vendors, suppliers, and customers, and otherwise finance its operations requires the availability of working capital from the DIP Financing and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtor, its estate, and its creditors. The Debtor does not have sufficient available sources of working capital and financing to operate its business or maintain its property in the ordinary course of business without the DIP Financing and authorized use of Cash Collateral.

(iv)     *No Credit Available on More Favorable Terms.*  Given its current financial condition, financing arrangements, and capital structure, the Debtor has been unable to obtain financing from sources other than the Lender on terms more favorable than the DIP Financing.  The Debtor has been unable to obtain sufficient unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtor has also been unable to obtain sufficient credit:  (a) having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtor and its estate that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien.  Financing on a postpetition basis is not otherwise available without granting the Lender:  (1) perfected security interests in and liens on (each as provided herein) all of the Debtor's existing and after-acquired assets with the priorities set forth in paragraph 7 hereof, (2) superpriority claims and liens, and (3) the other protections set forth in this Final Order.

(v)     *Use of Proceeds of the DIP Financing.*  As a condition to entry into the Credit Agreement, the extension of credit under the DIP Financing and the authorization to use Cash Collateral, PNC required, and the Debtor agreed, that proceeds of the DIP Financing shall be used, in each case in a manner consistent with the terms and conditions of the Loan Documents and in accordance with the Project Budget, solely to (a) pay a portion of the Pre-Petition Debt equal to $6,603,423.68; (b) pay the Lender's reasonable costs, fees and expenses in connection with the negotiation, documentation and enforcement of the Loan and the Loan Documents, including, without limitation, any of Lender's reasonable attorneys' fees; (c) finance Borrower's completion of construction

of the Improvements at the Project in a manner consistent with the Project Budget; (d) fund an interest reserve for the payment of interest on the DIP Financing; and (v) pay administrative costs associated with the Case consistent with the Project Budget, including the Carve-Out.

G. _Adequate Protection of Lender_. The Lender is entitled to receive adequate protection to the extent of any Diminution in Value of its interests in the Pre-Petition Collateral (including Cash Collateral). Pursuant to Sections 361, 363, and 507(b) of the Bankruptcy Code, as adequate protection, PNC, as the Lender will receive (i) adequate protection liens and superpriority claims, as more fully set forth in paragraphs 8 and 12 hereof, (ii) payments for all principal due under the Pre-Petition Credit Agreement through a "roll up" of part of the Pre-Petition Loan, and (iii) reserves shall be established to secure payment of interest due under the Pre-Petition Credit Agreement.

H. _Adequate Protection of Holders of Prior Liens_. The holders of Prior Liens are hereby provided with the following forms of adequate protection solely to protect against the diminution of value, if any, of their pre-petition collateral:

i. As adequate protection to the holders of Prior Liens ("Prior Lien Holders"), the Prior Lien Holders shall be entitled to replacement Liens, junior in priority to the liens granted under the DIP Financing, any liens on the Collateral to which the DIP Liens are junior, and the Carve-Out (the "Adequate Protection Liens") in all collateral of the same nature and type as the Prior Lien Holder's collateral (the ("Prior Lien Collateral"). The Adequate Protection Liens shall be subject and subordinate only to (i) the DIP Liens, (ii) any liens on the Collateral to which the DIP Liens are

junior; (iii) junior lien securing the Interest Residual; and (iv) the Carve-Out. The Prior Liens in the Prior Lien Collateral shall remain in place, but shall be junior in priority to the Liens of the DIP Lender securing the DIP Financing and the Interest Residual.

ii. To the extent any Cash Collateral was used by the Debtor prior to the date hereof, but after the Petition Date, the adequate protection provided pursuant to this Final Order shall also apply to provide the Prior Lien Holders with adequate protection against any diminution in their interests in the Prior Lien Collateral resulting from such use of such Cash Collateral prior to the date hereof. Except as otherwise provided in this Final Order with respect to the DIP Liens, the Adequate Protection Liens on the Prior Lien Collateral or Collateral shall not be subject to or *pari passu* with any DIP Lien on the Collateral by any order subsequently entered in the Case (for the avoidance of doubt, the Adequate Protection Liens shall not extend to Avoidance Actions or Avoidance Action Proceeds).

I. *Sections 506(c) and 552(b)*. In light of (i) the Lender's agreement to subordinate its liens and superpriority claims to the Carve-Out, and (ii) the Lender's agreement to subordinate its junior lien securing repayment of the Interest Residual to the Carve-Out and the DIP Liens, (a) the Lender is entitled to a waiver of any "equities of the case" claims under Section 552(b) of the Bankruptcy Code, and (b) subject to the reservation of the right to file 506(c) Waiver Objections (as defined below) in favor of the U.S. Trustee and a Creditors Committee, if any is ultimately formed, as set forth in

paragraph 34 of this Final Order, the Lender is entitled to a waiver of the provisions of Section 506(c) of the Bankruptcy Code.

J.     *Good Faith of the Lender.*

(i)     *Willingness to Provide Financing.*  The Lender has indicated a willingness to provide financing to the Debtor subject to:  (a) the entry of this Final Order; (b) approval of the terms and conditions of the DIP Financing and the Loan Documents; and (c) entry of findings by this Court that such financing is essential to the Debtor's estate, that the Lender is extending credit to the Debtor pursuant to the Loan Documents in good faith, and that the Lender's claims, superpriority claims, security interests and liens, and other protections granted pursuant to this Final Order and the Loan Documents will have the protections provided in Section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration of this Final Order or any other order.

(ii)     *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms and conditions of the DIP Financing and the Loan Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtor under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP Financing and the use of Cash Collateral were negotiated in good faith and at arms' length between the Debtor and the Lender.  Use of Cash Collateral and credit to be extended under the DIP Financing shall be deemed to have been so allowed, advanced, made, used, or extended in good faith, and for valid business purposes and uses, within the meaning of Section 364(e) of the Bankruptcy Code, and the Lender is

therefore entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code and this Final Order.

K. *Good Cause*. The relief requested in the DIP Motion is necessary, essential and appropriate, and is in the best interests of and will benefit the Debtor, its estate, and its creditors and equity holders, as its implementation will, inter alia, provide the Debtor with the necessary liquidity to (i) minimize further disruption to the Debtor's business and ongoing operations, (ii) preserve and maximize the value of the Debtor's estate for the benefit of all the Debtor's creditors, and (iii) avoid irreparable harm to the Debtor, and its estate, creditors, business, and assets.

L. *Notice*. Notice of the Hearing and other relief requested in the DIP Motion has been provided by the Debtor, by regular United States mail, postage prepaid, to certain parties in interest, including: (i) the U.S. Trustee; (ii) those parties listed on the list of creditors holding the twenty (20) largest unsecured claims against the Debtor; (iii) all persons or entities known to the Debtor that have asserted a lien or interest in any of the Collateral; (iv) all parties who have filed requests for notice under Bankruptcy Rule 2002; and (v) counsel to the Lender. The parties have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the relief set forth in this Final Order.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED that:**

1.      DIP Motion Approved.  The DIP Motion is granted, subject to the terms and conditions set forth in this Final Order.

2.      Objections Overruled.  All objections to the DIP Motion, to the extent not withdrawn or resolved, are hereby overruled.

**DIP Financing Authorization**

3.      Authorization of the DIP Financing and Loan Documents.  The Loan Documents are hereby approved on a final basis.  The Debtor is expressly and immediately authorized and empowered on a final basis to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Final Order and the Loan Documents.  The Debtor is hereby authorized and directed to pay, in accordance with this Final Order, the principal, interest, fees, expenses, and other amounts described in the Loan Documents and all other documents comprising the DIP Financing as such become due and without need to obtain further Court approval, including, without limitation, closing fees, and the reasonable fees and disbursements of the attorneys, advisors, accountants, and other consultants, and the reasonable legal fees and expenses of the Lender; provided, however, that statements describing such legal fees and expenses shall be provided to the U.S. Trustee, counsel for the Debtor and (if any) Creditors Committee at least ten (10) business days prior to their payment, and the Court shall have jurisdiction to determine any dispute concerning such invoices.  All collections and proceeds, whether ordinary course or otherwise, will be deposited and applied as required by this Final Order and the Loan Documents.  The Loan Documents represent valid and binding obligations of the Debtor, enforceable against the Debtor and its estate in accordance with their terms.

4.     <u>Authorization to Borrow</u>.  Until the DIP Maturity Date (as defined herein), and subject to the terms and conditions set forth in the Loan Documents, DIP Financing, and this Final Order, the Debtor is hereby authorized to request extensions of credit (in the form of a construction loan facility up to the aggregate principal amount set forth in the Credit Agreement) under the DIP Financing.

5.     <u>DIP Obligations</u>.  The Loan Documents and this Final Order shall constitute and evidence the validity and binding effect of the Debtor's DIP Obligations, which DIP Obligations shall be enforceable against the Debtor, its estate, and any successors thereto, including, without limitation, any trustee appointed in the Case, or any case under Chapter 7 of the Bankruptcy Code upon the conversion of the Case, or in any other proceedings superseding or related to any of the foregoing (collectively, the "<u>Successor Cases</u>").  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the DIP Maturity Date, except as provided in paragraph 11 herein.

6.     <u>Postpetition Liens</u>.  In order to secure the DIP Obligations, effective immediately upon entry of this Final Order, pursuant to Sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the Lender is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected first priority Liens on the Collateral superior in priority to all other liens, claims and encumbrances including Prior Liens, and a perfected second priority lien on the Collateral superior in priority to all other liens, claims and encumbrances including Prior Liens, other than the first priority liens which secure the DIP Obligations, to secure the repayment of the Interest Residual.  Notwithstanding the foregoing, the Debtor's obligations to repay the Interest Residual shall be secured by a junior lien on the Condo Project, as evidenced by the Junior Mortgage.  In addition, the Obligations (as such term is

defined in the Credit Agreement) shall constitute administrative claims against the Debtor's estate with super-priority status superior to any and all administrative expenses of the Debtor other than the Carve-Out.

7.     <u>DIP Lien Priority</u>.  Other than as set forth herein, the Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Case or any Successor Cases, upon the conversion of the Case to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of the Case or any Successor Cases.  No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Liens.

8.     <u>Superpriority Claims</u>.  Upon entry of this Final Order, the Lender shall be granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each the Case and any Successor Cases (collectively, the "<u>DIP Superpriority Claim</u>") for all DIP Financing obligations:  (a) except as set forth herein, with priority over any and all administrative expense claims and unsecured claims against the Debtor or its estate in the Case and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b) (except as set forth herein), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, as provided under Section 364(c)(1) of the Bankruptcy Code; and (b) which shall at all times be senior to the rights of the Debtor and its estate, and any successor trustee or other estate representative to the extent permitted by law.  Notwithstanding the foregoing, the DIP Superpriority Claim shall be subject to the Carve-Out.

9.     No Obligations to Extend Credit.  The Lender shall have no obligation to make any loan or advance under the Loan Documents, unless all of the conditions precedent to the making of such extension of credit under the Loan Documents and this Final Order have been satisfied in full or waived by the Lender in its discretion.

10.     Use of DIP Financing Proceeds.  From and after the Final Order, the Debtor shall use advances of credit under the DIP Financing only for the purposes specifically set forth in this Final Order, the Loan Documents, and in compliance with the Project Budget, subject to the permitted variances set forth in the Loan Documents.  Immediately upon entry of this Final Order, the Debtor is authorized to draw upon the DIP Financing subject to the terms and conditions of this Final Order, the Loan Documents, and in compliance with the Project Budget.

**Authorization to Use Cash Collateral**

11.     Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Final Order, the DIP Financing, and the Loan Documents, and in accordance with the Project Budget, the Debtor is authorized to use Cash Collateral until the DIP Maturity Date; provided, however, that nothing in this Final Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business, or the Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order, the DIP Financing, the Loan Documents, and in accordance with the Project Budget.

12.     Junior Mortgage.  Pursuant to Sections 361, 363(e), and 364(c)(3) of the Bankruptcy Code, as adequate protection of the interests of the PNC in the Pre-Petition Collateral against any Diminution in Value of such interests in the Pre-Petition Collateral on account of the granting of the DIP Liens, the Debtor's use of Cash Collateral and other Pre-Petition Collateral, and the imposition of the automatic stay, the Debtor, through the Credit

Agreement, shall grant to PNC (subject to the reservation of rights contained in Paragraph 27 of this Final Order), a lien junior in priority to the Lien of the Lender securing the obligations under the DIP Financing as evidenced by a Junior Mortgage on the Collateral to secure the Debtor's obligations as to the Interest Residual. The Junior Mortgage shall be shall be junior only to: (A) the Carve-Out; and (B) the DIP Liens.

### Provisions Common to DIP Financing and Use of Cash Collateral Authorizations

13.     **Amendments of the Loan Documents.** The Loan Documents may from time to time be amended, modified, or supplemented by the parties thereto without notice or a hearing if: (a) the amendment, modification, or supplement is (i) in accordance with the Loan Documents, (ii) beneficial to the Debtor, and (iii) not prejudicial in any material respect to the rights of third parties; (b) a copy (which may be provided through electronic mail or facsimile) of the amendment, modification, or supplement is provided to counsel for the Creditors Committee (if any) and the U.S. Trustee at least five (5) business days prior to the effective date of such amendment, modification, or supplement; and (c) the amendment, modification, or supplement is filed with the Court; provided, however, that consent of the Creditors Committee (if any) or the U.S. Trustee, and approval of the Court, is not necessary to effectuate any such amendment, modification, or supplement; and provided further that such amendments, modifications, or supplements shall be without prejudice to the right of any party in interest to be heard.

14.     **Project Budget Maintenance.** The Project Budget and any modification to, or amendment or update of, the Project Budget shall be in form and substance reasonably acceptable to the Lender and approved by the Lender in its reasonable discretion. The Project Budget may be amended or modified in writing from time to time only with the written consent of the Lender in its reasonable discretion.

15.     Modification of the Automatic Stay.  The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to:  (a) permit the Debtor to grant the DIP Liens and the Junior Mortgage; (b) permit the Debtor to perform such acts as the Lender may request in its reasonable discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtor to incur all liabilities and obligations to the Lender under the Loan Documents, the DIP Financing, and this Final Order; and (d) authorize the Debtor to pay the Lender to retain and apply payments made in accordance with the terms of this Final Order.

16.     Perfection of DIP Liens and Adequate Protection Liens.  This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Junior Mortgage, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document, which may otherwise be required under the law or regulation of any jurisdiction, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Junior Mortgage, or to entitle the Lender to the lien priorities granted herein. Notwithstanding the foregoing, PNC is authorized to file, as it, in its sole discretion, deems necessary, such financing statements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Junior Mortgage, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Closing Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens and/or the Junior Mortgage.  The Debtor is authorized and directed to

execute and deliver to the Lender promptly upon demand by the Lender all such financing statements, mortgages, notices, and other documents as the Lender may reasonably request. PNC may, in its discretion, file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument.

17. <u>Maintenance of Collateral</u>. Until the indefeasible payment in full of all DIP Obligations and all Prepetition Credit Obligations and the termination of the Lender's obligation to extend credit under the DIP Financing, the Debtor shall: (a) insure the Collateral as required under the DIP Financing or the Pre-Petition Loan, as applicable; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any order that may be entered by the Court, to which the Lender has first agreed or as otherwise required by the Loan Documents; <u>provided</u>, <u>however</u>, that the foregoing obligations of the Debtor shall be conditioned upon the Lender providing the Debtor with adequate funding to fulfill such obligations.

18. <u>DIP Maturity Date</u>. On the DIP Maturity Date and subject to paragraph 25 of this Final Order, (a) all DIP Obligations shall be immediately due and payable, and all commitments to extend credit under the DIP Financing will terminate, and (b) all authority to use Cash Collateral shall cease. For purposes of this Final Order, the "<u>DIP Maturity Date</u>" shall mean the Maturity Date as defined in the Credit Agreement.

19. <u>Events of Default</u>. The occurrence of an Event of Default under the Loan Documents shall constitute an Event of Default under this Final Order, unless waived in writing by the Lender.

20. <u>Rights and Remedies Upon Event of Default</u>. Upon the occurrence of an Event of Default, the Lender may provide written notice of such Event of Default to each of Borrower,

Borrower's counsel, the United States Trustee, and counsel for the Creditors Committee (if any) (the "Notice Parties") that identifies the applicable Event of Default and provides, among other things, that unless this Court determines within five (5) Business Days from the date of such notice that no Event of Default occurred and is continuing: (i) the automatic stay under Section 362(a) of the Bankruptcy Code shall be automatically, without further order of this Court, deemed lifted, vacated, modified, and terminated with respect to Lender to allow Lender to take any and all actions, as if no case were pending under the Bankruptcy Code; and (ii) the Lender shall be entitled to exercise its rights and remedies in accordance with the Credit Agreement and applicable law, and the Lender shall be entitled to exercise its rights and remedies in accordance with the Pre-Petition Loan Documents and applicable law, including, without limitation (A) to terminate any obligations of Lender under the Loan Documents and/or demand payment, and seek enforcement of the DIP Loan and all other Obligations of the Obligors then outstanding and owed to the Lender, and (B) to take any action, in its sole discretion, necessary to preserve and protect the Collateral and Pre-Petition Collateral. Upon the occurrence of an Event of Default, notice thereof delivered to the Notice Parties and the failure of the Court to determine within five (5) Business Days from the date of such notice that no Event of Default occurred and is continuing (a "Confirmed Event of Default"), in addition to the remedies set forth in the immediately preceding clause: (A) Borrower shall deliver and cause the delivery of the proceeds of the Collateral and Pre-Petition Collateral to the Lender as provided in the DIP Loan Documents and the Pre-Petition Loan Documents; (ii) the Lender shall continue to apply such proceeds in accordance with the provisions of the Credit Agreement; and (iii) any obligation otherwise imposed on PNC to provide any loan or advance to Borrower pursuant to this Final Order or the Credit Agreement shall immediately be suspended. Upon the occurrence of a

Confirmed Event of Default, in addition to all other rights, options and remedies granted or available to Lender under the DIP Loan Documents (each of which is also then exercisable by the Lender), or otherwise available at law or in equity, upon or at any time after the acceleration of the Obligations following the occurrence of an Event of Default, the Lender may, in its discretion, exercise all rights under the UCC and any other applicable law or in equity, and under all DIP Loan Documents or the Pre-Petition Loan Documents, as the case may be, permitted to be exercised after the occurrence of an Event of Default.

21. <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order</u>. Based on the findings set forth in this Final Order and the record made during the Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, the Lender shall be entitled to the protections provided in Section 364(e) of the Bankruptcy Code. Any such modification, amendment, or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim, or priority authorized or created hereby. Any liens or claims granted to the Lender hereunder arising prior to the effective date of any such modification, amendment, or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

22. <u>DIP and Other Expenses</u>. The Debtor is authorized and directed to pay all reasonable out-of-pocket expenses of the Lender in connection with the DIP Financing, as provided in the Loan Documents, whether or not the transactions contemplated hereby are consummated, including, without limitation, legal, accounting, architectural, environmental, inspection, collateral examination, monitoring and appraisal fees; provided, however, that the

Court shall have jurisdiction to determine any dispute concerning such fees and expenses. Statements describing Lender's legal fees and expenses shall be provided to the U.S. Trustee, counsel for the Debtor and (if any) Creditors Committee at least ten (10) business days prior to their payment, and the Court shall have jurisdiction to determine any dispute concerning such invoices.

23. <u>Rights of Access and Information</u>. Without limiting the rights of access and information afforded the Lender under the Loan Documents, the Debtor shall be, and hereby is, required to afford representatives, agents, and/or employees of the Lender reasonable access to the Debtor's premises and books and records in accordance with the Loan Documents and the Pre-Petition Loan Documents, as applicable, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.

24. <u>Carve-Out</u>.

(a) <u>Carve-Out</u>. As used in this Final Order, the "<u>Carve-Out</u>" means, upon the occurrence of the DIP Maturity Date, the following expenses: (i) all statutory fees payable to the Clerk of the Court or the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6); and (ii) the allowed and unpaid professional fees, expenses and disbursements incurred by the Debtor and the Creditors Committee (if any) or any other statutory committee appointed in the Case pursuant to Section 1102 of the Bankruptcy Code (if any) (each, a "<u>Statutory Committee</u>") for any professionals retained by final order of the Court (which order has not been vacated or stayed, unless the stay has been vacated) by the Debtor or any Statutory Committee under Sections 327, 328 or 1103(a) of the Bankruptcy Code (the "<u>Case Professionals</u>") in an aggregate amount (the "<u>Case Professionals Carve-Out</u>") not to exceed $150,000.00, plus such fees, expenses and

disbursements incurred prior to the DIP Maturity Date, but which remain unpaid as of the DIP Maturity Date, but solely to the extent incurred in accordance with the Project Budget (collectively, the "Allowed Professional Fees").

(b)     No Direct Obligation to Pay Professional Fees.  The Lender shall not be responsible for the direct payment or reimbursement of any fees, expenses or disbursements of any Case Professionals incurred in connection with the Case or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the Lender in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.  For the avoidance of doubt, this paragraph 24(b) is without prejudice to any rights under Section 506(c) of the Bankruptcy Code to the extent preserved pursuant to paragraph 27 of this Final Order.

(c)     Payment of Allowed Professional Fees Prior to the DIP Maturity Date.  Prior to the occurrence of the DIP Maturity Date, the Debtor shall be permitted to pay Allowed Professional Fees, solely to the extent incurred in accordance with the Project Budget.  The amounts paid in accordance with the Project Budget shall not reduce the Carve-Out.

(d)     Payment of Carve-Out After DIP Maturity Date.  Any payment or reimbursement made on or after the occurrence of the DIP Maturity Date in respect of any Allowed Professional Fees (exclusive of the application of any retainers by any of the Case Professionals) shall permanently reduce the applicable Case Professionals Carve-Out on a dollar-for-dollar basis.  Any funding of the Carve-Out shall be added to and made a part of the DIP Obligations and secured by the Collateral and otherwise entitled

to the protections granted under this Final Order, the Loan Documents, the Bankruptcy Code, and applicable law.

25.    <u>Limitations on the DIP Financing, the Collateral, the Cash Collateral, and the Case Professionals Carve-Out</u>.  The DIP Financing, the Collateral, the Cash Collateral, and the Case Professionals Carve-Out may not be used in connection with: (a) subject to the limited use of Cash Collateral set forth in paragraph 11 above after the occurrence of the DIP Maturity Date, preventing, hindering, or delaying the enforcement by or realization by Lender of remedies or rights in the Collateral upon or following an Event of Default; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of Collateral without the consent of the Lender; (c) using or seeking to use any insurance proceeds constituting Collateral without the consent of the Lender; (d) objecting or challenging in any way any claims, liens, Collateral (including Cash Collateral), or Pre-Petition Collateral (including Cash Collateral), held by or on behalf of the Lender; (e) asserting, commencing, or prosecuting any claims or causes of action, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against PNC or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees; or (f) prosecuting an objection to, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Credit Obligations, the Pre-Petition Liens, or any other rights or interests of the Lender; <u>provided</u>, <u>however</u>, that the Case Professionals Carve-Out and such collateral proceeds and loans under the Loan Documents may be used for allowed fees and expenses in an amount not to exceed $10,000 in the aggregate, incurred solely by the Creditors Committee, if any is ultimately appointed, in investigating the validity, enforceability, perfection, priority, or extent of the Pre-Petition Liens during the Challenge Period (as defined herein); and <u>provided</u>,

further, that after the DIP Maturity Date, the Debtor may use Cash Collateral to (i) maintain the Collateral and (ii) to request and participate in an emergency hearing before the Court for the sole purpose of contesting whether an Event of Default has occurred and/or is continuing.

26. <u>Payment of Compensation</u>. Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of the Lender to object to the allowance and payment of such fees and expenses.

27. <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>. Nothing in this Final Order or the Loan Documents shall prejudice the rights of the Creditors Committee (if any) , a successor trustee, and any other party in interest with requisite standing other than the Debtor, to seek to object to or to challenge the findings, the Debtor's Stipulations, or any other stipulations herein, including, but not limited to, those in relation to: (a) the validity, extent, priority, or perfection of the mortgage, security interests, and liens of the Lender with respect to the Pre-Petition Collateral; or (b) the validity, allowability, priority, fully-secured status, or amount of the Prepetition Credit Obligations. A party, including the Creditors Committee, if appointed, must commence, as appropriate, without limitation, any claim against the Lender in the nature of a setoff, counterclaim, or defense to the Prepetition Credit Obligations within sixty (60) calendar days following the entry of this Final Order (the "Challenge Period"). Upon the expiration of such Challenge Period, to the extent not otherwise waived or barred: (A) any and all such challenges and objections by any party (including, without limitation, the Creditors Committee, if any, or any other Statutory Committee that may be appointed in this Case, any Chapter 11 trustee, and/or any examiner appointed in this Case, and any Chapter 7 trustee and/or examiner appointed in any Successor Case), shall be deemed to be forever waived and barred; (B) all of the Debtor's Stipulations, waivers, releases,

affirmations, and other stipulations as to the priority, extent, and validity of the Lender's claims, liens, and interests of any nature, under the Pre-Petition Loan Documents or otherwise incorporated or set forth in this Final Order, shall be of full force and effect and forever binding upon the Debtor, its estate, and all creditors, interest holders, and other parties in interest in this Case and any Successor Cases; and (C) without further order of the Court, the Prepetition Credit Obligations shall be allowed as fully secured claims within the meaning of Section 506 of the Bankruptcy Code for all purposes in connection with this Case and any Successor Cases. Upon a successful challenge brought pursuant to this paragraph, the Court may fashion any appropriate remedy.

28. <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

29. <u>Section 506(c) Claims</u>. No costs or expenses of administration, which have been or may be incurred in this Case at any time, shall be charged against the Lender or any of its claims, the Collateral, or the Pre-Petition Collateral pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent, as applicable, of the Lender and no such consent shall be implied from any other action, inaction, or acquiescence by the Lender.

30. <u>No Marshaling/Application of Proceeds</u>. The Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral or the Pre-Petition Collateral, as the case may be, and proceeds shall be received and applied pursuant to the terms of the Loan Documents notwithstanding any other agreement or

provision to the contrary, provided, however, that nothing herein shall impair the rights of the Lender with respect to the Collateral.

31. <u>Section 552(b)</u>. The Lender shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Lender, with respect to the proceeds, product, offspring, or profits of any of the Pre-Petition Collateral.

32. <u>Discharge Waiver</u>. The DIP Obligations and the Prepetition Credit Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been indefeasibly paid in full in cash on or before the effective date of a confirmed plan of reorganization.

33. <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the Lender's right to seek any other or supplemental relief in respect of the Debtor; (b) any of the rights of the Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of Section 362 of the Bankruptcy Code, (ii) request dismissal of the Case or any Successor Cases, conversion of the Case to a case under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Lender. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtor's, the Creditors Committee's, or any party in interest's right

to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Final Order.

34.   <u>No Waiver by Failure to Seek Relief</u>.  The failure of the Lender to seek relief or otherwise exercise its rights and remedies under this Final Order, the Loan Documents, the Pre-Petition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Lender, the Creditors Committee (if any), the U.S. Trustee, or any party in interest.

35.   <u>Binding Effect of Final Order</u>.  Immediately upon execution by this Court, the terms and provision of this Final Order shall become valid and binding upon and inure to the benefit of the Debtor, PNC, all other creditors of the Debtor, any Statutory Committee or any other court-appointed committee appointed in the Case, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Case, any Successor Cases, or upon dismissal of the Case or Successor Case.

36.   <u>No Modification of Final Order</u>.  Until termination of the Credit Agreement and payment and satisfaction of all Obligations thereunder, Borrower agrees that, without the express prior written consent of Lender, Borrower will not:  (a) file any Reorganization Plan that does not provide for the repayment in full of the DIP Loan and the Pre-Petition Debt (together with all accrued and unpaid interest) or permit any Guarantor to do the same; (b) limit, affect or modify, or apply to this Court to limit, affect or modify any of the Lender's rights with respect to the Obligations, including rights with respect to Pre-Petition Collateral and Collateral and the priority thereof and payment of various amounts, pursuant to any Reorganization Plan or otherwise; (c) apply to this Court for the authority or allow to be incurred, created, assumed, suffered or permitted any claim, lien or encumbrance against the Debtor, or any of its assets to be

pari passu with, or senior to, the liens, encumbrances and claims of the Lender granted and arising under this Final Order and the Credit Agreement; (d) make any payments or transfer any property on account of claims asserted by Debtor's vendors for reclamation in accordance with UCC Section 2 702 and Bankruptcy Code Section 546(c) in excess of an amount to be agreed upon, in each case, by Debtor and PNC; (e) enter into any agreements or file any motion seeking an Order of this Court for the return of inventory or supplies to any vendor pursuant to Bankruptcy Code Section 546(c); (f) except as may be consented to by Lender, make payments other than in respect of the expenses provided for in the Project Budget; and (g) incur or apply to this Court for authority to incur, or suffer to exist, any indebtedness having the priority afforded by Section 364(c) or (d) of the Bankruptcy Code (including any Superpriority Claims) other than the financing provided for under the Credit Agreement unless such financing would pay in full the Obligations under the DIP Financing and the Pre-Petition Obligations.

37. <u>Final Order Controls</u>. In the event of any inconsistency between the terms and conditions of the Loan Documents or any prior Order of this Court in the Case, and this Final Order, the provisions of this Final Order shall govern and control.

38. <u>Survival</u>. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in the Case; (b) converting the Case to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing the Case or any Successor Cases; or (d) pursuant to which this Court abstains from hearing the Case or any Successor Cases. The terms and provisions of this Final Order, including the claims, liens, security interests, and other protections granted to PNC pursuant to this Final Order and/or the Loan Documents, notwithstanding the entry of any such order, shall continue in the Case, in any Successor Cases, or following dismissal of the Case or

29

any Successor Cases, and shall maintain their priority as provided by this Final Order until, in respect of the DIP Financing, all the DIP Obligations, pursuant to the Loan Documents and this Final Order, have been indefeasibly paid in full (such payment being without prejudice to any terms or provisions contained in the DIP Financing which survive such discharge by their terms), and all commitments to extend credit under the DIP Financing are terminated. In addition, the terms and provisions of this Final Order shall continue in full force and effect for the benefit of the Lender notwithstanding the repayment in full of or termination of the DIP Obligations.

39.     _Effect of this Final Order_.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution thereof.

40.     _Retention of Jurisdiction_.  The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

Dated: June 6, 2011
      Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE